Patten v. Pearson.

## JOHN PATTEN vs. WILLIAM T. PEARSON.

It is competent for one who has indorsed a negotiable promissory note in blank in a suit brought against him by his immediate indorsee to show in defense, that he indorsed the note merely to pass the title, and that the understanding tween the parties was, that the defendant's indorsement was made solely for the purpose of transferring the note, and that he assumed no liability, conditional or otherwise, thereby.

When the plaintiff's testimony shows enough to justify the jury in finding that the indorsement was made for such purpose only, and that such an understanding did subsist between the parties, it is erroneous to instruct the jury to find for the plaintiff, if they are satisfied that the note was indorsed by the defendant prior to its delivery to the plaintiff.

The plaintiff held, by assignment from the defendant, a mortgage on real estate in Massachusetts, containing a power to sell upon breach of condition, in pursuance of which, after due notice, a sale was made at public auction, in August, 1859, and the property struck off for $1,950 to the plaintiff's agent, who, without paying the price, conveyed the property to the plaintiff, who indorsed upon the note the amount of the agent's bid, less expenses of sale and amount paid by him on a prior mortgage, and some years later brought this suit to recover a balance due on the note against the defendant, as indorser. The defendant offered to prove, that in March, 1861, the property was sold for $2,300, and claimed that that sum should be allowed as paid on the note, and that the sale, made in 1859, should be treated as a nullity. *Held,* that in the absence of any evidence tending to show fraudulent practices on the part of the holder of this mortgage in making the first sale, or that the property was fairly worth more at that time than the auction price, this claim must be disallowed, and the evidence that the property sold for a larger sum at a later period rejected.

*Semble,*—That a sale under such circumstances, where the mortgagee or trustee becomes the purchaser, is voidable by the mortgager, or *cestui que trust,* in equity within a reasonable time, but cannot be treated as absolutely void in a suit at common law where there is no evidence of actual fraud or unfair practices.

ON EXCEPTIONS.

ASSUMPSIT to recover a balance alleged to be due on a negotiable promissory note, given by one Pratt to the defendant, and by the latter indorsed to Bragg & Patten, or order, and by them to the plaintiff.

The defendant contended that he indorsed the note for the accommodation of Bragg & Patten, of which firm the plaintiff was

then a member, having sold the same for what the defendant owed Bragg & Patten on account.

The defendant testified, that some fifteen or twenty minutes after he had settled with Bragg & Patten, and had delivered the note in suit to them, he, at their request, indorsed the note for their convenience.

The plaintiff contended that the note was not delivered until after the defendant had indorsed it; and that the defendant voluntarily indorsed it without any request from the plaintiff.

On this part of the case, the presiding judge instructed the jury that the indorsement made out a *prima facie* case for the plaintiff; that the defendant might show that the indorsement was made without consideration; that if they believed that the note was not indorsed by the defendant when he first delivered it to Bragg & Patten, and received from them his account receipted, but was thereafterwards indorsed by him at Patten's request, the defense would be made out, and the defendant entitled to a verdict; but if they were satisfied that the note was indorsed by the defendant prior to delivering it to Bragg & Patten, and receiving from them his account receipted, they would find for the plaintiff for the amount of the note less the partial payments indorsed.

Against the plaintiff's objections the presiding judge admitted, *de bene esse*, evidence of the consideration of the deed of the premises mortgaged, from Bragg to Sargent, and the defendant contended that whatever was received by Bragg should be accounted for as payment on the note.

The presiding judge instructed the jury to disregard this evidence, and the defendant alleged exceptions.

The remaining facts are sufficiently stated in the opinion.

*J. A. Peters*, for the plaintiff, contended, *inter alia*, that the objection to the sale from Fiske to Bragg & Patten cannot be taken at law, but only in equity; and cited 1 Pars. on Con. 76, note *jj*, and cases there cited; Story's Agency, § 211, and authorities in note; *Shelton* v. *Homer*, 5 Met. 462, 467; *Litchfield* v. *Cudworth*, 15 Pick. 23, 31.

*Rowe & Appleton,* for the defendant.

A mortgage, with power to sell on breach of condition, creates a trust; and the mortgagee, in exercising that power, is subject to the laws regulating trustees. 2 Story on Eq., § 1013. 1 Wash. on Real Prop. 497, § 25. *Hyndman* v. *Hyndman,* 19 Verm. 9.

The law will not permit one to buy an estate which he was intrusted to sell, so as to make a profit to himself; but will be considered as holding for the benefit of the *cestui que trust,* if the latter so elect. 1 Story on Eq., § 318. 1 Wash. on Real Prop. 500, 439. *Jennison* v. *Hapgood,* 7 Pick. 1, 7. *Howard* v. *Ames,* 3 Met. 309, 311.

Bragg &' Patten, after conveyance by Fiske, held the property under the original trust as security for the note. *Middlesex Bank* v. *Minot* 4 Met. 325, 329.

By the conveyance to and from Fiske, the title appears on record discharged of the trust, so that Sargent holds absolutely; and as the defendant, in payment of the note, cannot get the land back, he claims to have the purchase-money, in the hands of his trustee, allowed on the note. Hill on Trustees, 159, 536.

BARROWS, J. The plaintiff, as indorsee of a promissory note, dated Oct. 15, 1858, given by one Pratt, for the sum of $2,215, secured by a mortgage on real estate, in Malden, Mass., and made payable in three years, with interest, to the order of the defendant, and by him indorsed, claims to recover a balance due thereon, with costs of protest against the defendant as indorser.

The defendant denies his liability on the ground that his indorsement was without consideration, and was made for the accommodation of Bragg & Patten, of which firm the plaintiff was a member at the time of the indorsement. If the defendant indorsed the note merely to pass the title, and the understanding between these parties was, that the defendant's indorsement was made solely for the purpose of transferring the note, and that the indorser assumed no conditional liability thereby in case the maker failed to pay, :and the property mortgaged for security proved insufficient, it was

competent for the defendant, under recent decisions of this court, to show these facts, and thereby entitle himself to a verdict. *Smith* v. *Morrill*, 54 Maine, 48. *Patten* v. *Pearson*, 55 Maine, 39.

Touching these matters, the plaintiff himself testified " that this note was given Bragg & Patten by Pearson, in payment for some lumber the firm had sold him in July or August, 1858. At the time Pearson's paper was not good ; he was in embarrassed circumstances, insolvent. . . . He offered us this note, and a mortgage given to secure it. We did not like to take it; but found we could get nothing else, probably. The note was $120 or $125 more than the amount of our bill against Pearson. He offered to let us have the note and mortgage for the bill, and call it square ; to throw in the difference, and we take the note and receipt the bill. Finally, we concluded to do so."

Now this is the plaintiff's version of the transaction ; and upon this statement alone there would be fair ground for maintaining, and asking the jury to find that the true intent and understanding of the parties to that transaction was, that Bragg & Patten accepted the note and mortgage, looking only to the maker and the real estate as a full equivalent for their bill against Pearson ; that they did not expect nor understand that their insolvent debtor, from whom they were taking what they could get, and agreeing to " call it square," was assuming, by that very transaction, a liability to them for a greater sum than their original demand. If this be so, and if it would have been competent for the jury to have found, upon the plaintiff's own statement, that such an understanding as to the object and effect of the defendant's indorsement as was claimed by the defendant, actually subsisted between the parties to the negotiation, it follows that the instruction which made the verdict to depend solely upon the time when the indorsement was made, and whether it was before or after the note was first delivered to Bragg & Patten, was erroneous.

The jury were told, that, " if the note were not indorsed when he first delivered it and received his bill receipted, and defendant

indorsed it afterwards at the request of Patten as he stated, the defence would be made out ; but if they were satisfied that the note was indorsed prior to his handing it to Patten, and receiving his bill receipted, they would find for the plaintiff."

This single point, of the time of the indorsement, was the only one of the slightest consequence as to which there was any conflict between the testimony of the plaintiff and the defendant. It was doubtless of some importance as bearing upon the question at issue. But was it necessarily decisive of that question so as to require a verdict for the plaintiff if the indorsement was made before the first delivery? We think not. For obvious reasons, if the jury found that Bragg & Patten had accepted the note and mortgage, and receipted their bill before the indorsement was made, and that the plaintiff subsequently requested the indorsement for the expressed purpose of enabling them to collect the note, as the defendant testified, it might be conclusive against the plaintiff. But it is not so clear that the defendant's ground was entirely gone if the jury failed to find this conclusive fact in his favor against the plaintiff's denial.

But for the instruction complained of, they might still have found, from the circumstances of the negotiation, as testified to by the plaintiff himself, that Bragg & Patten took the note and mortgage as the best thing they could get from an insolvent debtor, and were to " call it square,"—neither party understanding that that debtor was thus assuming a conditional liability for an amount greater than the original debt which he was trying to pay off.

Parties frequently indorse negotiable paper solely for the purpose of facilitating collections, and would be in bad condition if the fact of indorsement before delivery were to be taken as conclusive evidence of their liability as indorsers to the party to whom they pass it. As between the indorser of such paper and his immediate indorsee, or any one but a *bona fide* holder for value, all the circumstances of the negotiation may be inquired into for the purpose of ascertaining what the contract really was, and whether the indorser, for a valuable consideration, assumed any liability to the person to

whom he passed the paper. *Prima facie,* his blank indorsement imports a conditional liability ; but it is competent for the indorser to show that no such liability, in fact, exists, by proof of such circumstances connected with the transaction as may satisfy the jury, that neither of the parties to it understood that any such liability was to be assumed. And this he may do, although the indorsement preceded the delivery ; perhaps not so easily as if the indorsement had been requested afterwards, for a specific purpose, but still, to the entire satisfaction of the tribunal with whom the decision rests.

The time of the indorsement and this particular conversation between the plaintiff and defendant, testified to by the defendant, and denied by plaintiff, were but a part of the proof upon which the defendant had a right to rely. Inasmuch as the instruction made the case to turn upon that point only, the exceptions must be sustained.

For the sake of avoiding, if possible, future delays in this much-vexed suit, it may be well, though it is not necessary for the present disposition of the case, to state the reasons for holding that the defendant has no cause of complaint in the instructions touching the question of payment.

The facts proved are these : Pratt's mortgage, given to secure the note, contained a power of sale upon breach of the condition by the non-payment of principal or interest. Upon non-payment of the first half year's interest, Bragg and Patten took measures to sell, employing one Fiske as their agent. A sale took place in August, 1859, and the property was struck off to Fiske for $1,950, of which $667.69 was reserved to pay off a prior mortgage. The testimony is, that the bidding by Fiske was on his own individual responsibility, without instructions from Bragg and Patten to bid it in for them, and contrary to their wishes ; but, subsequently, Fiske conveyed to Bragg and Patten, receiving compensation for his services in making the sale, and never, in fact, paying any part of the $1,950. Bragg and Patten deducted from the auction price the amount of the prior mortgage, and the sum paid Fiske for the expense of agency, advertising, and sale, and indorsed what would have been

the net proceeds of the sale if Fiske had paid the price and kept the property, on the note as a part-payment thereof.   Then, when they dissolved, Patten released his interest in the property to Bragg, who, in March, 1861, sold it to one Sargent for about $2,300.   Hereupon the defendant claims that the sale to Fiske was a sham, and that there should be allowed, as paid on the note in March, 1861, the $2,300 which Bragg obtained for the property at that time.

This claim is manifestly inequitable in its full extent, because it allows nothing for relieving the property from a prior incumbrance, and nothing for the necessary expenses of sale.

Very clearly in this suit at law upon the mortgage note against an indorser, the defense of payment, beyond the amount indorsed, cannot be considered as maintained by such evidence.

The mortgaged property operates an extinguishment of the mortgage debt, or a reduction of it *pro tanto*, only when the equitable rights of the mortgager have become extinguished, and the value of the property at that time, and not at some subsequent period, is the measure of such reduction.   The fact that the mortgagee has taken possession of the property for the purpose of foreclosure does not make it a payment; but the debt is to be considered as subsisting, and the holder of it is entitled to his full remedy at law for the collection of it against all parties liable upon it until the property has become absolute in him by the extinction of all outstanding equities.   *Portland Bank* v. *Fox*, 19 Maine, 99.   *Southard* v. *Wilson*, 29 Maine, 56.   *West* v. *Chamberlain*, 8 Pick. 336.

Afterwards, he can recover only the balance remaining unpaid when the fair net value of the property at that time has been deducted.   If, then, the sale by auction in August, 1859, was regularly made in good faith, the equitable rights of the mortgager (and of the defendant, if he had any) were extinguished then; and it was the net value of the property at that date, and not the price obtained for it more than a year and a half afterwards, which is to be looked at in order to determine the amount which shall be allowed as a payment upon the note.   And we know of no mode of ascer-

taining the value of property that can be more satisfactory than a fairly conducted sale at public auction.

The only suggestion made in behalf of defendant to impeach this sale is, that Bragg and Patten became the purchasers of the property indirectly through Fiske. There is no intimation that the sale was not fairly conducted, or that there was not a full compliance with all the requirements of law in other respects; no offer to prove that the property was, at that time, worth anything more than the $1,950, at which price it was struck off to Fiske.

Now even if it were conceded that it would have been competent for the jury to find (notwithstanding the uncontradicted testimony that Fiske bought for himself without instructions from his principals) that Bragg and Patten were the real, though indirect, purchasers at this sale, and that this defendant is not such a stranger to the property as to preclude him from calling the validity of the sale in question in the proper forum, there would still remain an insuperable objection to the use which the defendant proposes to make of the fact.

Sales where trustees, having power to sell, become the purchasers, though undoubtedly voidable in equity at the election of the parties interested seasonably interposing, are not void; and it does not seem to be held, in jurisdictions where courts having equity powers exist, that they can be treated as void or avoided at the instance of the principal in suits at common law, without proof of actual fraud and bad faith, or of disregard of positive instructions on the part of the trustee.

Herein the case at bar differs essentially from that of *Howard* v. *Ames*, 3 Met. 308, cited for defense. In that case the defendant (the maker of the note and mortgage) offered to prove, that the mortgagee had fraudulently and corruptly managed the sale, and sold the property under its value for the purpose of obtaining a title for himself at a price less than its value, and that a sale fairly made, would have realized more than enough to pay the note.

The barren facts proved in the case at bar warrant no such assumption, and cannot authorize us, in a suit at law, to treat as

invalid a sale which no one has sought, in all these years, to set aside in equity.

For the cause first herein discussed only,

*The exceptions are sustained.*

*New trial granted.*

KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.

APPLETON, C. J., did not concur.